IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Zoe Graham and Iain Graham, | ) |
| | ) C.A. No. 6:23-04523-HMH |
| Plaintiffs, | ) |
| | ) **OPINION & ORDER** |
| vs. | ) |
| | ) |
| Wal-Mart Stores East, L.P., | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on Defendant Wal-Mart Stores East, L.P.'s ("Walmart") motion for summary judgment under Federal Rule of Civil Procedure 56. For the reasons below, the court grants Walmart's motion.

## I. BACKGROUND

### A. Facts

This case arises from a slip and fall Plaintiff Zoe Graham ("Zoe") suffered in November 2022 while at a Walmart store in Greenville, South Carolina. Zoe was shopping in the dairy section when she "stepped into a liquid substance" and "suddenly and without warning slipped and fell." (Compl. ¶ 10, ECF No. 1-1.) Zoe described the liquid as being "thick," "cloudy," and "goopy," though she does not know what the liquid was, where it came from, or how long it had been on the floor. (Mot. Summ. J. Ex. F (Zoe Graham Dep. 6-8), ECF No. 43-7); (Resp. Opp'n Ex. 8 (Zoe Graham Dep. 3), ECF No. 46-7.)

Zoe's husband, Plaintiff Iain Graham ("Iain"), arrived at the Walmart about thirty minutes after she fell. (Mot. Summ. J. Ex. G (Iain Graham Dep. 3), ECF No. 43-8.) Iain did not examine the liquid while at the store but did review photographs of the scene taken shortly after the accident. (Id. Ex. G (Iain Graham Dep. 6, 9), ECF No. 43-8.) Like his wife, Iain testified that he

1

had no "personal knowledge" of the source of the liquid, how long it had been on the floor, or whether any Walmart employee knew about the liquid prior to the accident. (Id. Ex. G (Iain Graham Dep. 8), ECF No. 43-8.)

Zoe's slip and fall was captured on the store's surveillance video. In the twenty minutes before the incident, nearly two dozen individuals walked through the area where Zoe later fell. (Id. Ex. B (Surveillance Video at 40:05-1:00:05), ECF No. 43-3.) None of these individuals slipped, fell, or appeared to lose their footing, and the liquid that Zoe faults for her accident is not visible on the video footage.

During discovery, the Grahams deposed three Walmart employees who were working at the store on the day of the incident. Tia Woods ("Woods") can be seen on the surveillance video pushing a cart through the dairy section around twenty-three minutes before Zoe slipped. (Id. Ex. B (Surveillance Video at 36:30), ECF No. 43-3.) Woods, who was working as a personal shopper at the time, testified that she was trained to look for spills and did not "remember seeing anything on the floor." (Mot. Summ. J. Ex. C (Woods Dep. 5), ECF No. 43-4.) She further testified that there was "no way" that the liquid leaked from her cart. (Id. Ex. C (Woods Dep. 5-6), ECF No. 43-4.)

Tabetha Mattison ("Tabetha") was the "team lead over food and consumables" at the Walmart store. (Mem. Supp. Mot. Summ. J. 3, ECF No. 43-1.) According to Tabetha, Walmart employees inspected the dairy section "20 to 25 times a day" for spills and other hazards. (Mot. Summ. J. Ex. D (Tabetha Mattison Dep. 5), ECF No. 43-5.) She herself walked through the dairy section two minutes before Zoe fell, "touring the floor, picking up any boxes or debris that[] [were] there." (Id. Ex. B (Surveillance Video at 57:59), ECF No. 43-3); (Id. Ex. D

2

(Tabetha Mattison Dep. 13), ECF No. 43-5.)  She did not observe any liquid on the floor at that time.  (Id. Ex. D (Tabetha Mattison Dep. 14), ECF No. 43-5.)

Tabetha returned to the dairy section after learning that a customer had fallen.  (Id. Ex. D (Tabetha Mattison Dep. 7), ECF No. 43-5.)  She described the liquid as a "fresh spill" because it "wasn't dried up and shopping carts [had not] been [run] through it."  (Mot. Summ. J. Ex. D (Tabetha Mattison Dep. 9, 12), ECF No. 43-5.)  She cleaned the spill with paper towels and believed the liquid to be coffee after "smell[ing] it on a paper towel."  (Id. Ex. D (Tabetha Mattison Dep. 9-11), ECF No. 43-5.)

Lashuna Mattison ("Lashuna") was stocking merchandise in another aisle of the store when a customer alerted her to Zoe's accident.  (Id. Ex. E (Lashuna Mattison Dep. 4), ECF No. 43-6.)  She stayed with Zoe and "guarded" the area until a salaried member of management arrived.  (Id. Ex. E (Lashuna Mattison Dep. 4-5), ECF No. 43-6); (Resp. Opp'n Ex. 7 (Lashuna Mattison Dep. 3), ECF No. 46-6.)  Lashuna did not attempt to clean the liquid, but she too stated that "[i]t kind of looked like coffee."  (Mot. Summ. J. Ex. E (Lashuna Mattison Dep. 6), ECF No. 43-6); (Resp. Opp'n Ex. 7 (Lashuna Mattison Dep. 3), ECF No. 46-6.)

**B. Procedural History**

On August 1, 2023, the Grahams sued Walmart in South Carolina state court, asserting claims for negligence and loss of consortium.  (Compl. ¶¶ 23-32, ECF No. 1-1.)  Walmart removed the case to this court on September 8, 2023, based on diversity jurisdiction.  (Not. Removal, ECF No. 1.)  On June 5, 2024, Walmart moved for summary judgment.  (Mot. Summ. J., ECF No. 43.)  The Grahams responded in opposition on June 13, 2024, (Resp. Opp'n, ECF No. 46), and Walmart filed its reply on June 20, 2024, (Reply, ECF No. 49.)  On June 24, 2024,

the Grahams – without leave of court – filed a surreply.[1]  (Surreply, ECF No. 50).  This matter is ripe for review.

## II. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.  The court views "all facts and reasonable inferences in the light most favorable to the nonmoving party." Ballengee v. CBS Broad., Inc., 968 F.3d 344, 349 (4th Cir. 2020).

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party does so, the burden shifts to the nonmoving party to "go beyond the pleadings" and come forward with "specific facts showing that there is a genuine issue for trial." Id. at 324.  To withstand summary judgment, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013).

---

[1] Technically, this filing is a surresponse, not a surreply.  A surresponse is "[a] second response by someone who opposes a motion," which "comes in answer to the movant's reply." Surresponse, Black's Law Dictionary (11th ed. 2019).  Even though "[n]either the Federal Rules of Civil Procedure nor the Local Civil Rules provide for the ability to file a [surresponse or surreply] as a matter of right," Brinston v. City of Easley, No. 8:20-cv-3660-TMC, 2023 WL 2643837, at *1 (D.S.C. Mar. 27, 2023) (unpublished), the court has considered the Graham's June 24 filing in evaluating Walmart's motion.

### III. DISCUSSION

The court will address Zoe's negligence claim first before turning to Iain's claim for loss of consortium.

### A. Negligence

To prevail on a negligence claim, a plaintiff must prove "(1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) damage proximately resulting from the breach of duty." Charleston Dry Cleaners & Laundry v. Zurich Am. Ins. Co., 586 S.E.2d 586, 588 (S.C. 2003). In a premises-liability case, a property owner's duty of care depends on whether the plaintiff was an invitee, licensee, or trespasser. Sims v. Giles, 541 S.E.2d 857, 861 (S.C. Ct. App. 2001).

The parties here do not dispute that Zoe was an invitee on Walmart's premises. (Mem. Supp. Mot. Summ. J. 6, ECF No. 43-1); (Resp. Opp'n 8, ECF No. 46.) "Generally, the owner of property owes an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety and is liable for injuries resulting from the breach of such duty." Singleton v. Sherer, 659 S.E.2d 196, 205 (S.C. Ct. App. 2008). To recover damages, Zoe must show either "(1) that [her] injury was caused by a specific act of [Walmart] which created the dangerous condition; or (2) that [Walmart] had actual or constructive knowledge of the dangerous condition and failed to remedy it." Anderson v. Racetrac Petroleum, Inc., 371 S.E.2d 530, 531 (S.C. 1988); Cook v. Food Lion, Inc., 491 S.E.2d 690, 691 (S.C. Ct. App. 1997).

As an initial matter, Zoe does not appear to rely on a creation or actual notice theory of liability, and she has offered no evidence to suggest that any Walmart employee placed the liquid on the floor or actually knew it was there before she fell. (Mot. Summ. J. Ex. F (Zoe Graham Dep. 6-9), ECF No. 43-7); (Id. Ex. G (Iain Graham Dep. 6, 9), ECF No. 43-8.) Thus, to survive

summary judgment, Zoe must point to some evidence that would allow a reasonable jury to find that Walmart had constructive knowledge of the hazard.

Constructive knowledge can be established by showing that the foreign substance "had been on the floor sufficiently long that the defendant should have discovered it." Wimberley v. Winn-Dixie Greenville, Inc., 165 S.E.2d 627, 629 (S.C. 1969). Here, Zoe does not know the source of the liquid or how long it had been on the floor before she slipped. (Mot. Summ. J. Ex. F (Zoe Graham Dep. 6-8), ECF No. 43-7.) Still, she argues that Walmart had constructive knowledge of the liquid because (1) the liquid appeared "thick," "cloudy," and "goopy"; (2) photographs taken after the incident depict what appears to be a shopping cart track mark running through the liquid; and (3) the surveillance video "shows no evidence of a liquid being spilled onto the floor" in the hour leading up to the incident. (Resp. Opp'n 1-2, 10-12, ECF No. 46.) In Zoe's view, these facts, taken together, "would allow a reasonable jury to infer that the liquid had been on the floor longer than [an] hour, which would have given [Walmart] and its employees plenty of time to recognize and clean up the liquid before [she] fell." (Id. at 12, ECF No. 46.)

Zoe's argument, however, is foreclosed under South Carolina premises-liability law. South Carolina does not permit a jury "to speculate that [a foreign substance] was on the floor for such a length of time as to infer that [the] defendant was negligent in failing to detect and remove it." Wimberley, 165 S.E.2d at 629; Gillespie v. Wal-Mart Stores, Inc., 394 S.E.2d 24, 25 (S.C. Ct. App. 1990); Wintersteen v. Food Lion, Inc., 518 S.E.2d 828, 830 (S.C. Ct. App. 1999), aff'd, 542 S.E.2d 728 (S.C. 2001); Pennington v. Zayre Corp., 165 S.E.2d 695, 696 (S.C. 1969).

Zoe acknowledges that the video footage does not reveal when the liquid first appeared on the floor. Thus, determining that the liquid had been on the floor for over an hour – as

opposed to a few minutes – would require a jury to engage in impermissible speculation. Massey v. Wal-Mart Stores East, L.P., No. 4:09-cv-01694-RBH, 2010 WL 3786056, at *3 (D.S.C. Sept. 2, 2010) (unpublished) ("[T]he length of time that the foreign substance has been on the floor is not a determination that can be left to speculation.").

For this reason, the court concludes that Zoe has failed to raise a genuine dispute of material fact that Walmart had constructive knowledge of the liquid. See, e.g., Wintersteen, 518 S.E.2d at 830 (holding that the evidence "was insufficient to establish constructive notice" where, although "the liquid could have been on the floor for an extended period of time, it [was] just as possible that it had been on the floor for only moments before [the plaintiff] fell"); Hawkins v. Wal-Mart Stores, Inc., No. 2:22-cv-2698-BHH, 2024 U.S. Dist. LEXIS 21673, at *10 (D.S.C. Feb. 7, 2024) (unpublished) (granting summary judgment where the plaintiff "testified that she ha[d] 'no clue' where the water came from, how the floor got wet, or how long the water was on the floor" and "surveillance footage show[ed] no visible signs of water on the floor prior to [her] fall").

Because Zoe has not produced evidence showing that Walmart either created or had actual or constructive knowledge of the liquid that caused her to slip and fall, the court grants summary judgment in favor of Walmart on her negligence claim.

### B. Loss of Consortium

"Under South Carolina law, unlike that of some other states, loss of consortium is an independent action, not derivative." Preer v. Mims, 476 S.E.2d 472, 474 (S.C. 1996). Even so, "there must be some intentional or tortious conduct for a loss of consortium claim to stand." Williams v. Lancaster Cnty. Sch. Dist., 631 S.E.2d 286, 294 (S.C. Ct. App. 2006). Because the court has found that Walmart was not negligent as a matter of law, summary judgment is

appropriate on Iain's loss of consortium claim as well.  Creighton v. Coligny Plaza Ltd. Pshp., 512 S.E.2d 510, 523 (S.C. Ct. App. 1998) ("[A] loss of consortium claim cannot arise if no tort is committed against the impaired spouse." (internal quotation marks omitted)).

## IV. Conclusion

For the foregoing reasons, Walmart's motion for summary judgment, docket number 43, is granted.

                                                      s/Henry M. Herlong, Jr.
                                                      Senior United States District Judge

Greenville, South Carolina
June 28, 2024